UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KENNETH HICKMAN-BEY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-266 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

In this civil rights action, Plaintiff Kenneth Hickman-Bey, a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), challenges as unconstitutional the TDCJ's grooming policy that requires all inmates to be clean-shaven. (D.E.1-3). Plaintiff, a practicing Muslim, states that he is required to wear a beard under the tenets of his faith, Sunna of the Prophets, and prescriptions of the Holy Qur'an, and he seeks a preliminary injunction to allow him to wear a quarter-inch beard as this case is litigated and until the constitutional and statutory issues are resolved.[1] (D.E. 22). Defendants oppose Plaintiff's request for a preliminary injunction. (D.E. 25). For the reasons stated herein, the Court grants Plaintiff's motion for preliminary injunctive relief as to his request to grow and maintain a quarter-inch beard during the pendency of this action, as well as to enjoin defendants and their assigns from harassing or retaliating against Plaintiff in regards to his beard and pursuing this litigation.

---

[1] Plaintiff seeks additional preliminary injunctive relief including "legal visits" with other inmates, indigent supplies, and to be free from retaliation and/or harassment by prison officials. (D.E. 22, pp. 2-3).

I.      **Jurisdiction.**

The court has federal question jurisdiction over this action.  28 U.S.C. § 1331.

II.     **Procedural background.**

On January 20, 2012, Plaintiff filed his original complaint for declaratory and injunctive relief in the 201st Judicial District Court of Travis County, Texas, alleging that the TDCJ's no-beard policy violates his First Amendment right to the free exercise of his religion, his Fourteenth Amendment right to equal protection, and his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-2(a).[2]  (D.E.1-3, ¶ 1).  He named as defendants: (1) the Texas Board of Criminal Justice (TBCJ); (2) Oliver Bell, TBCJ Chairman; (3) Brad Livingston, TDCJ Executive Director; (4) Eileen Kennedy, Region IV Director; and (5) Lorie Davis, (former) McConnell Unit warden.  *Id.*, p. 2.

On February 17, 2012, Defendants removed the action to the United States District Court for the Western District of Texas, Austin Division, and filed their Answer.  (*See* D.E. 1-1, 2).  On March 7, 2012, Plaintiff filed a motion to stay the action pending the TDCJ's appeal of *Garner v. Morales*, Case No. 2:06-cv-218, a case in which another Muslim and McConnell Unit inmate challenged the TDCJ's no-beard policy under RLUIPA.  (D.E. 8).  In the *Garner* case, following a bench trial, on May 19, 2011, Judge Hudspeth granted Garner a declaratory judgment that the TDCJ grooming policy could not be enforced against him and enjoined the McConnell Unit from doing so.  (*See* Case

---

[2] The Court evaluates Plaintiff's request for preliminary relief on the basis of his RLUIPA claim only.

No. 2:06-cv-218, D.E. 153). The TDCJ appealed the *Garner* decision, and consequently in this case, on March 20, 2012, the Austin district court stayed this action while the Fifth Circuit considered *Garner* on appeal. (D.E. 14).

On July 10, 2013, Plaintiff moved to lift the stay because, on April 2, 2013, the Fifth Circuit affirmed *Garner* and specifically found that the TDCJ had failed to carry its RLUIPA burden that the no-beard policy is the least restrictive means of furthering the compelling governmental interest in security. *See Garner v. Gutierrez,* 713 F.3d 237, 247 (5th Cir. 2013).

On July 12, 2013, Plaintiff filed the instant motion for a preliminary injunction. (D.E. 22).

On July 16, 2013, the Austin district court lifted the stay.

On July 31, 2013, Defendants filed a response in opposition to Plaintiff's motion for a preliminary injunction. (D.E. 25). On August 15, 2013, Plaintiff filed a reply to Defendants' response. (D.E. 31).

On August 23, 2013, the case was transferred on venue grounds from the Western District, Austin Division, to this Court. (D.E. 32).

On September 30, 2013, Plaintiff was granted a continuance and stay of proceedings. (D.E. 38).

On October 18, 2013, the stay was lifted and pending motions were reactivated, including Plaintiff's motion for a preliminary injunction. (D.E. 44).

On November 29, 2013, Plaintiff filed a motion to expedite consideration of his motion for a preliminary injunction. (D.E. 48).

**III. Plaintiff's requested relief.**

In his motion for preliminary injunction (D.E. 22), Plaintiff seeks specifically:

(1) A preliminary injunction prohibiting Defendants from enforcing TDCJ's clean-shaven policy;

(2) A preliminary injunction prohibiting Defendants from denying Plaintiff legal visits with other Muslim prisoners who wish to assist Plaintiff with this lawsuit;

(3) A preliminary injunction ordering Defendants to allow Plaintiff to use his own funds to buy pen, paper, envelopes, etc., or to provide him with indigent supplies; and

(4) A preliminary injunction to protect Plaintiff throughout the TDCJ from harassment, retaliation, or demands to be clean-shaven.

In his original complaint, Plaintiff did not claim that he has been denied access to the courts or indigent supplies, let alone that he has been prejudiced in any pending non-frivolous litigation. *See Lewis v. Casey,* 518 U.S. 343, 356 (1996) (to state a cognizable First Amendment claim for denial of access to the courts, a prisoner must demonstrate that his position as a litigant was actually prejudiced). Moreover, Plaintiff has no constitutional right to legal visits with other prisoners. *See Shaw v. Murphy*, 532 U.S. 223, 230 (2001) (inmates do not possess a First Amendment right to discuss legal matters with other inmates). Because these allegations do not state cognizable First Amendment violations, Plaintiff is not entitled to preliminary or other relief based on these claims. As to Plaintiff's allegations that McConnell Unit employees harass him regarding his desire to wear a beard, the Court notes that mere harassment or verbal abuse alone does not state a constitutional violation. *See Bender v. Brumley,* 1 F.3d 271, 274 n.4 (5th Cir. 1993). However, prison officials may not harass an inmate in retaliation for the inmate

exercising his First Amendment rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Thus, in fashioning preliminary relief on Plaintiff's RLUIPA claim, the Court will address Plaintiff's concerns of harassment and retaliation.

### IV. Preliminary injunction prerequisites.

To obtain a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that the injunction might cause to the defendant; and (4) that the injunction will not disserve the public interest. *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 288 (5th Cir. 2012) (citation omitted). Injunctive relief is an extraordinary remedy that requires the applicant to unequivocally show the need for its issuance. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted). Failure to establish any of the four elements will result in the motion for injunctive relief being denied. *Guy Carpenter & Co. v. Provenzale,* 334 F.3d 459, 464 (5th Cir. 2003) (citation omitted).

### V. Analysis.

#### A. Plaintiff establishes a substantial likelihood of success on the merits on his claim challenging the grooming policy.

Plaintiff argues that enforcement of the TDCJ's grooming policy requiring him to be clean-shaven violates RLUIPA.

The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if

the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A government regulation substantially burdens a "religious exercise" for purposes of RLUIPA if it "truly pressures the adherent to significantly violate his beliefs." *Adkins v. Kaspar,* 393 F.3d 559, 570 (5th Cir. 2004).

RLUIPA imposes the strict scrutiny test on prison regulations; however, the courts are to apply that standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005) (citation omitted). Prison security, in and of itself, is a compelling state interest, and deference is due to institutional officials' expertise in this area. *Id.* at 724 n. 13. RLUIPA does not elevate accommodation of religious observances over a prison's need to maintain order and safety, and any accommodation must be measured so that it does not override other significant interests. *Id.* at 722. A prison is free to resist requests for religious accommodations that either impose unjustified burdens on other prisoners, or jeopardize the effective functioning of a prison. *Id.* at 726.

In defining "substantial burden" under RLUIPA, the Fifth Circuit has explained that "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins,* 393 F.3d at 570. Further: "the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.*

Plaintiff has met his prima facie burden with respect to his RLUIPA claim that the TDCJ's grooming policy substantially burdens his ability to exercise his religious beliefs. In his original complaint made under penalty of perjury, Plaintiff states that he is a Muslim and that he practices and follows the Islamic faith, the basis of which is set forth in the Qur'an. (D.E. 1-3, at p. 3, 6). In addition, Plaintiff seeks to model his behavior after Muhammad's "customary practices," or "sunnah." *Id.* Because Muhammad is a role model, Muslim men are encouraged to wear beards to emulate Muhammad and to please Allah; not wearing a beard can be viewed as a rejection of both.[3] Defendants do not dispute, question, or address the sincerity of Plaintiff's Islamic faith and beliefs. (*See* D.E. 25).

Plaintiff states that, if he grows a beard and then refuses to shave, he is charged with a disciplinary case. (D.E. 1-3, p. 3). If he is found guilty of the disciplinary offense,

---

[3] *See e.g.* http://www.alahazrat.net/islam/follow-the-sunnah-and-increase-your-beauty.php.

he faces an array of punishments, ranging from loss of commissary, recreation, and/or visitation privileges, to more serious consequences such as solitary confinement and/or reduction in time-earning classification. *Id.* He claims that he is routinely harassed by prison personnel for attempting to wear a beard. *Id.* In his preliminary injunction motion, Plaintiff reports that, unless he is clean-shaven, he is not allowed in the dining hall and is denied his meals until he shaves. (D.E. 22, p. 2). Although Plaintiff has repeatedly invoked the *Garner* decision as grounds that he be permitted to maintain a quarter-inch beard, prison officials refuse to extend the *Garner* ruling to the other Muslim inmates at the McConnell Unit.

For purposes of a preliminary injunction, Plaintiff has established that his sincere religious beliefs require him to maintain at least a quarter-inch beard, while the TDCJ's grooming policy requires him to be clean-shaven. He has also shown that, if he violates the grooming policy, he is subjected to disciplinary measures ranging from missed meals, to loss of privileges, to more severe punishments and penalties that could possibly adversely affect the duration of his sentence. This is precisely the choice RLUIPA prohibits.

To defeat Plaintiff's success on the merits of his RLUIPA claim, Defendants must demonstrate that the clean-shaven policy is the least restrictive means to achieve the compelling governmental interest of prison security and cost effectiveness. 42 U.S.C. § 2000cc. *See also Cutter*, 544 U.S. at 723 (recognizing institutional security in the context of costs and limited resources as a valid governmental interest). However, the *Garner* decision effectively forecloses this point.

In the *Garner* trial, TDCJ officials testified that the TDCJ's clean-shaven policy is essential to the compelling governmental interest of safety in that (1) the identification of prisoners would be hindered by allowing beards to be worn, (2) a beard could be a hiding place for weapons or contraband, and (3) a prison escapee could change his appearance by shaving his beard, rendering recapture more difficult. (*See* Case No. 2:06-cv-218, D.E. 153, Memorandum Opinion and Order, p. 4). The defendants also expressed economic concerns, contending that additional expense would be involved in (1) changing the photographs on prison identification cards, and (2) making barbers and/or clippers available to trim the beards of Muslim prisoners to the length of one-quarter inch. *Id.* The trial court found unpersuasive both the TDCJ's security and costs arguments, and granted declaratory and injunctive relief to Garner.

On appeal, the Fifth Circuit overruled the TDCJ's objections that allowing an exception to the no-beard rule would have an adverse economic impact on the TDCJ, noting that the trial court had specifically addressed this issue and found that the barber services were already in place and available, and that the TDCJ's evidence of increased costs "was vague and consisted primarily of speculation and conjecture." *Garner*, 713 F.3d at 243. The Fifth Circuit found further that, on the record presented, the TDCJ had failed to carry its burden to show that the no-beard policy is the least restrictive means of furthering the compelling governmental interest in security. *Id.* at 247.

In their response to Plaintiff's motion for a preliminary injunction, Defendants state that Plaintiff cannot demonstrate a likelihood of success on the merits "…because the ruling in *Garner* only applied to Garner." (D.E. 25, p. 5). This argument ignores the

specific findings made in *Garner* regarding facial hair and security, and the costs of allowing Muslim prisoners to maintain a quarter-inch beard. Indeed, the trial court specifically acknowledged that allowing Garner to wear a beard might likely cause other Muslim inmates at the McConnell Unit to "desire the same benefit," but he found that barber services are already available and accommodating Muslim prisoners would not present a significant expense. (*See* Case No. 2:06-cv-218, D.E. 153, pp. 6-7). Defendants have failed to offer any evidence to suggest that the no-beard policy is the least restrictive means to achieve a compelling government interest, and the *Garner* decision is direct authority to the contrary. Accordingly, Plaintiff prevails on the first prong for issuance of a preliminary injunction on his RLUIPA claim.

### B. Plaintiff has established a substantial threat that he will suffer irreparable injury if the injunction is denied.

For an injunction to issue, "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir. 1985) (citation omitted). An "actual injury" must be certain to occur. *Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999) (per curiam).

As a matter of law, the violation of a constitutional right in and of itself constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373-74 (1976). And more specifically for purposes of this case, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church,* 697 U.S. at 295 (quoting *Elrod*, 427 U.S. at 373). Indeed, in *Opulent Life Church*, the

Supreme Court extended to RLUIPA claims its holding that violations of the First Amendment are *per se* irreparable injury for purposes of preliminary injunction analysis:

> … This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms, and the statute requires courts to construe it broadly to protect religious exercise. *See* 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.") …

*Opulent Life Church,* 697 U.S. at 295.

Plaintiff has established that, unless a preliminary injunction is issued, he is forced to choose between violating his sincerely held religious beliefs or facing disciplinary penalties. Thus, Plaintiff has satisfied the second prong of the preliminary injunction inquiry on his RLUIPA claim.

### C. The threatened injury to Plaintiff outweighs the harm to Defendants.

Plaintiff has established that an irreparable injury, the violation of his rights under RLUIPA, is substantially likely to occur in the absence of a preliminary injunction. In response, Defendants argue that the *Garner* decision does not hold that the TDCJ's grooming policy is unconstitutional, but instead, only establishes that the TDCJ failed to prove at trial that the policy "was the least restrictive means to accomplish its interest." (D.E. 25, p. 3).

Defendants' argument is merely a distinction without a difference. Although neither the trial court nor the Fifth Circuit made a determination that the clean-shaven requirement of the TDCJ grooming policy is facially unconstitutional, both courts

specifically held: (1) the no-beard policy imposes a substantial burden on the religious exercise of Muslim inmates; (2) the no-beard policy does not aid in the identification of prisoners nor in the secreting of contraband; and (3) allowing Muslim inmates to grow and maintain quarter-inch beards might result in some additional expense, but such cost would not be "significant." *Garner,* Case No. 2:06-cv-218, D.E. 153, pp. 6-7; *Garner,* 713 F.3d at 243. Thus, both *Garner* decisions indicate that the TDCJ would suffer no harm if it is enjoined from enforcing the no-beard policy as to Muslim inmates seeking to wear a quarter-inch beard. To the contrary, were the TDCJ to stop such enforcement, it would free itself of present and future lawsuits on this issue. Indeed, Defendants responded initially to that decision by voluntarily allowing Plaintiff to wear a quarter-inch beard, thus further demonstrating that Plaintiff's substantial injury outweighs the threatened harm to Defendants.

### D. No harm to the public interest.

It is well established that federal courts "do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum v. Fano,* 427 U.S. 215, 228 (1976). Indeed, the Supreme Court has instructed all courts to afford prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). *See also Gates v. Cook,* 376 F.3d 323, 338 (5th Cir. 2004) (noting that federal courts "are not to micromanage state prisons"). Even within the strict scrutiny standard of RLUIPA, courts must defer to the judgment of prison administrators on matters of prison safety,

order, discipline, security, and efficiency. *Cutter,* 544 U.S. at 723. Because prison security itself is a compelling state interest, prison officials need not accommodate requests for religious exemptions that jeopardize these interests. *Id.*

Defendants argue that the no-beard policy "is founded on reasons of prison security and cost concerns." (D.E. 25, p. 8). However, both of those concerns were raised in *Garner* and rejected at trial and on appeal. There is simply no evidence that allowing an inmate to wear a quarter-inch beard presents an impediment to prompt and accurate identification or contributes to the trafficking of contraband. Similarly, there is no evidence that permitting Plaintiff or other Muslim inmates at the McConnell Unit to grow and maintain a quarter-inch beard would cause any significant cost or expense; the prison has several barbershops and inmates are already required to make frequent visits to the barber to maintain their required haircuts.

Defendants maintain that the *Garner* holdings do not apply to other Muslim inmates and contend that each case presents a different "context" and will generate a "substantially different record." (D.E. 25, p. 5). However, this position appears inapposite to Defendants' costs concerns. Indeed, to require each Muslim inmate to file and pursue separate litigation to stop the TDCJ from continuing to enforce a policy that violates federal law would place an unnecessary burden on judicial resources and time. In addition, the State of Texas would incur additional cost and expense in litigating the

issue, and, as in *Garner*, be responsible for attorney fees and costs of Plaintiff's appointed counsel.[4]

Finally, the Fifth Circuit has held that "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church*, 697 F.3d at 298 (citations omitted). Therefore, when a likelihood of success on the merits is established, the final requirement for a preliminary injunction is met. *Id.* "This principle applies equally to injunctions protecting RLUIPA rights because, as discussed, RLUIPA enforces the First Amendment and must be construed broadly." *Id.* Because Plaintiff has established a likelihood of success on the merits of his RLUIPA claim, which alleges infringement upon his First Amendment rights, a preliminary injunction would not disserve the public interest.

## VI. Injunctive relief granted.

Plaintiff has met his preliminary injunction burden on his RLUIPA claim. Accordingly, it is ORDERED that Defendants, their successors and assigns, and all persons acting in concert with them, including the McConnell Unit officials and staff, be and are hereby, RESTRAINED and ENJOINED pursuant to Rule 65 of the Federal Rules of Civil Procedure from enforcing the TDCJ no-beard policy against Plaintiff Kenneth Hickman-Bey, TDCJ-CID #665874.

It is further ORDERED that Plaintiff be permitted to grow, wear, and maintain a quarter-inch beard as a religious exercise.

---

[4] In the *Garner* case, plaintiff's counsel was awarded his attorney fees and costs totaling over $87,000.00. *See* Case No. 2:06-cv-218, D.E. 189, Satisfaction of Judgment.

Finally, it is ORDERED that Defendants, their successors and assigns, and all persons acting in concert with them, including the McConnell Unit officials and staff, be and are hereby, RESTRAINED and ENJOINED pursuant to Rule 65 of the Federal Rules of Civil Procedure, from harassing or retaliating against Plaintiff regarding his beard, to include: no disciplinary cases for failure to groom;[5] no denial of privileges, including library visits, commissary, and recreation; and no abusive language, derogatory comments, or gestures concerning Plaintiff's beard, appearance, or religious beliefs.

ORDERED this 20th day of December, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff is reminded that this relief extends only to his beard and that all other provisions of the TDCJ grooming policy remain applicable to him.